```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

| | | |
|---|---|---|
| Jimmie L. Rice, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20 C 3693 |
| | ) | |
| | ) | |
| Dr. Young Kim and Wellpath LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Memorandum Opinion & Order

Wellpath, LLC ("Wellpath") contracts with Will County to provide medical services at the Will County Adult Detention Facility ("the Jail"). While he was a pretrial detainee at the Jail, plaintiff Jimmie Rice received medical care from one of Wellpath's employees, Dr. Young Kim. Rice claims Dr. Kim provided him with inadequate medical care in violation of the Fourteenth Amendment, and that Wellpath is also liable for this violation under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). In addition to these claims brought under 42 U.S.C. § 1983, Rice brings a claim for intentional infliction of emotional distress against both defendants. Defendants now move for summary judgment. For the reasons explained below, the motion is granted in part and denied in part.

I.

Rice entered the Jail as a pretrial detainee on January 5, 2020. Defs.' L.R. 56.1 Statement of Material Facts ("DSMF"), ECF 88 ¶ 1. At 53 years old, Rice had a lengthy history of kidney stones. Pl.'s L.R. 56.1(b) Statement of Additional Facts ("PSAMF"), ECF 91 ¶ 1. Indeed, over the past 15 months, Rice had been hospitalized with kidney stones on five different occasions, and just two months prior to his arrival at the Jail a CT scan revealed multiple kidney stones in both of his kidneys. *Id.* ¶ 14. Rice reported his history of kidney stones to a nurse at the start of his detainment on January 5, 2020. DSMF ¶ 6. At a physical assessment conducted by Dr. Kim within 14 days of Rice's arrival, Rice maintains that he also informed Dr. Kim--who was the medical director in charge of providing medical care to inmates at the Jail, *id.* ¶ 5--of that history. PSAMF ¶¶ 11-12. Defendants dispute that Rice notified Dr. Kim about his history of kidney stones, *see* Defs.' Resp. to PSAMF, ECF 95 ¶¶ 11–12, but Dr. Kim testified at his deposition that, at a medical intake in January 2020, he "remember[ed] vaguely that [Rice] didn't complain too much except that he reported that he has a history of kidney stone[s]," Kim Dep. Tr., ECF 88-2 at 59:16–20. The parties also dispute whether Rice encouraged Dr. Kim to order his past medical records and whether Dr. Kim in fact obtained those records. *See* Defs.' Resp. to PSAMF ¶¶ 12-13.

At the Jail, inmates could submit healthcare requests to be evaluated by medical staff. *See* Kim Dep. Tr. at 30:9–16; *see generally* Rice Med. Recs., ECF 88-3. Rice submitted two such requests on January 21, 2020 and January 22, 2020. *See* Rice Med. Recs. at 240–41.[1] In the request Rice signed on January 21st, Rice wrote that he was "having pain and burning" while urinating and requested to see the doctor. *Id.* at 240. The next day, a staff member indicated on the form that Rice refused to appear for evaluation, *see id.*, but Rice disputes this, pointing to his deposition testimony that he never refused medical care during his time at the Jail, *see* Rice Dep. Tr., ECF 88-4 at 27:23–28:9, 57:17–58:1. In the request he signed on January 22nd, Rice stated that he believed he was passing a kidney stone and wrote "please take me to see the doctor ASAP! Please, it's an emergency!" Rice Med. Recs. at 241. A urinalysis was conducted on January 22, 2020, which was negative for blood and leukocytes. *Id.*; DSMF ¶ 11.

Rice submitted another healthcare request on January 30, 2020, reporting "extreme pain" from passing a kidney stone and asking for "help ASAP." DSMF ¶ 13; Rice Med. Recs. at 238. According to defendants, he refused to show up to be evaluated and relayed that he was "feeling okay," DSMF ¶ 13, but Rice disputes

---

[1] It is unclear on what date each was submitted. One is signed by Rice on January 21st and marked received on January 22nd, Rice Med. Recs. at 240, while the other is signed by Rice on January 22nd and marked received on January 21st, *id.* at 241.

that he refused to appear, once more pointing to his deposition testimony that he never refused to be seen for medical complaints.

Yet another healthcare request came on either March 24, 2020 or March 25, 2020, in which Rice wrote "I am having extreme pain in my side and also burning when I urinate. I believe I have a kidney stone that is stuck. Please help. Need to see the doctor. Also vomiting from the pain." *Id.* ¶ 14; Rice Med. Recs. at 235. In response, medical staff performed a urinalysis on March 25, 2020, which turned up trace ketones, leukocytes, and blood. DSMF ¶ 14; Rice Med. Recs. at 56. He was put on antibiotics and Motrin. DSMF ¶ 15. Another urinalysis performed on April 3, 2020 was negative for leukocytes and blood; and a sexually transmitted disease (STD) test conducted that day was negative too. *Id.* ¶ 16; Rice Med. Recs. at 52.[2] Meeting with medical staff that day, Rice reported he was still experiencing pain but that it was "not bad." DSMF ¶ 16. When another urinalysis was performed in response to a healthcare request on April 8, 2020, it revealed leukocytes and a "large" quantity of blood; Rice was prescribed the antibiotic Ciproflaxin. *Id.* ¶ 17; Rice Med. Recs. at 54.

On April 17, 2020, Rice was seen by Dr. Kim pursuant to another healthcare request. DSMF ¶ 20. Dr. Kim performed a

---

[2] Defendants suggest this STD test was conducted on April 17, 2020, DSMF ¶ 18, but the exact date of that test is immaterial for purposes of this motion.

4

urinalysis and, based on the results, determined that Rice might have a recurrent urinary tract infection (UTI), for which he prescribed the antibiotic Bactrim, as well as ibuprofen and Flomax for pain. *Id.*

Rice submitted additional healthcare requests on April 26, 2020 and April 27, 2020, in which he indicated that the prescribed antibiotics had not helped and that he wanted a CT scan and an appointment with a urologist. *Id.* ¶¶ 24-25. Dr. Kim saw Rice on April 30, 2020, and ordered an ultrasound of Rice's kidneys, which revealed bilateral kidney stones--including one in the right kidney measuring about 1.7 centimeters--and moderate hydronephrosis--or swelling of the kidney--in the left kidney. *Id.* ¶¶ 26-27. At the time, Dr. Kim assumed Rice had a kidney stone, and prescribed him Flomax to assist Rice in passing the stone, as well as ibuprofen for pain. *Id.* ¶¶ 27, 42. According to defendants, Rice refused to take Ciproflaxin that was also prescribed, but Rice disputes that assertion. *Id.* ¶ 27; Pl.'s Resp. to DSMF, ECF 90 ¶ 27. Another ultrasound on May 7, 2020 again indicated multiple bilateral kidney stones and moderate hydronephrosis of the left kidney. DMSF ¶ 28. Rice was instructed to take Tylenol and continue taking his other medications. *Id.* When he was seen again on May 14, 2020, he reported that he had blood in his urine. *Id.* ¶ 29. Rice was prescribed Naproxen and instructed to alert staff if his condition worsened. *Id.* ¶¶ 29-30.

5

Following the May 7th ultrasound, Dr. Kim referred Rice for a CT scan and an appointment with a urologist. *Id.* ¶ 33. The CT scan took place on June 2, 2020, and it showed multiple bilateral kidney stones, including one measuring 1.8 centimeters on the left side that had moved into the ureter. *Id.* ¶ 33. A urologist met with Rice that day and a cystoscopy and stone manipulation to remove the stone in his ureter were scheduled for June 11, 2020. *Id.* ¶ 34. For reasons that are disputed, the Jail canceled the scheduled procedure. *Compare id.* ¶ 35 (noting that the appointment was canceled pursuant to Jail policy which prohibits inmates from knowing the date of medical appointments), *with* Pl.'s Resp. to DSMF ¶ 35 (citing Dr. Kim's deposition testimony that this was not an example of a time that a scheduled procedure was canceled pursuant to this Jail policy). Rice received a prescription for Naproxen on June 14, 2020. DSMF ¶ 36.

On June 18, 2020, the Twelfth Judicial Circuit Court in Will County ordered medical staff at the Jail to submit a letter explaining Rice's diagnosis and necessary medical treatment by June 20, 2020. PSAMF ¶ 28. The court later found that the Jail's medical unit failed to comply with that order and ordered Rice to be released on June 23, 2020. Rice Med. Recs. at 16. The day after his release, Rice was admitted to a nearby hospital where he underwent a cystoscopy, retrograde pyelogram, laser lithotripsy,

6

and extensive stone extraction; a stent was also inserted because Rice's distal ureter was swollen. PSAMF ¶ 30.

In addition to relying on Rice's medical records and the deposition testimony of Rice and Dr. Kim, the parties retained expert witnesses who opined on the adequacy of the medical care Rice received. As relevant to this motion, Rice's expert witness, Dr. Coogan, testified that Dr. Kim's failure to order imaging by March 26, 2020 was a substantial departure from accepted medical judgment. Coogan Dep. Tr., 88-5 at 40:7-16; *see also* Am. Expert Report of Dr. Coogan ("Coogan Rep."), ECF 91-2 at 3-6. Dr. Coogan also opined that the evaluation with a urologist should have occurred within about one week of the early May ultrasound that indicated kidney stones, Coogan Dep. Tr. at 57:17-58:14; Coogan Rep. at 6-7, and that Rice could have avoided unnecessary pain had Dr. Kim treated Rice in accordance with accepted medical judgment, Coogan Rep. at 7.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether triable issues exist, I resolve all

7

evidentiary conflicts in Rice's favor and give him "the benefit of all reasonable inferences that may be drawn from the record." *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012) (citation omitted).

Defendants do not discuss Rice's *Monell* claim against Wellpath in their opening brief, but they maintain in their reply brief that this claim fails in the event I grant them summary judgment on the § 1983 claim against Dr. Kim. Because they offer no additional argument for granting summary judgment on the *Monell* claim and because, as I discuss below, I largely deny defendants' motion for summary judgment on the § 1983 claim against Dr. Kim, defendants' motion fails as to the *Monell* claim. Additionally, defendants are silent on Rice's claim for intentional infliction of emotional distress, so their motion fails on that claim.

That leaves Count I, in which Rice asserts a claim against Dr. Kim under § 1983 for inadequate medical care in violation of the Fourteenth Amendment. During the relevant period, Rice was a pretrial detainee, not a convicted prisoner, so it is the "objective reasonableness" standard articulated by the Seventh Circuit in *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018) --and not the Eighth Amendment's "deliberate indifference" standard--that applies to his claim. That standard focuses on two questions: (1) "whether the 'defendants acted purposefully, knowingly, or perhaps even recklessly'" when they considered the

8

consequences of their handling of the plaintiff's case; and (2) "whether the defendants' actions were 'objectively reasonable.'" *Pittman ex rel. Hamilton v. County of Madison*, 970 F.3d 823, 827 (7th Cir. 2020) (quoting *Miranda*, 900 F.3d at 353–54). Inherent in the second question are the sub-questions whether the plaintiff "suffered from an objectively serious medical condition" and "whether the medical staff's response to it was objectively reasonable." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019).

Defendants do not contest that Rice suffered from an objectively serious medical condition, nor do they develop argument on whether Dr. Kim acted "purposefully, knowingly, or recklessly" when he considered the consequences of his handling of that condition.[3] Instead, they focus on their contention that Dr. Kim's conduct was "objectively reasonable."

---

[3] Defendants summarily assert that "[p]laintiff has failed to adduce any such evidence to support his allegations that [d]efendants acted purposefully, knowingly, or recklessly," Defs.' Mem., ECF 87 at 4, but fail to adequately develop argument on this front. *See also id.* at 8 ("Plaintiff has identified no evidence of recklessness on the part of any [d]efendant."). For example, defendants do not discuss what a plaintiff must show in order to demonstrate the requisite mental states, so it is unclear how Rice's evidence falls short. Accordingly, that argument is waived. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (finding undeveloped, unsupported arguments waived). In any event, Rice has put forth evidence that Dr. Kim was "aware of" or "strongly suspected facts showing" a need for kidney stone diagnosis and treatment, which is sufficient for this prong. *Pittman*, 970 F.3d at 827; *see, e.g.*, Kim Dep. Tr. at 96:17-21 (suggesting Dr. Kim's awareness of the possibility of kidney stones after March 25, 2020 urinalysis).

9

Whether Dr. Kim's conduct was objectively reasonable depends on disputed material facts, so summary judgment is inappropriate. Defendants emphasize that Rice was evaluated upon his arrival at the Jail, that staff responded to his multiple healthcare requests, that he received urinalysis tests, that he was prescribed antibiotics and pain management medications, that Dr. Kim ordered ultrasounds and referred Rice to a urologist for kidney stone treatment, and that Rice ultimately underwent surgery for kidney stone removal. Defendants also tender the expert opinions of Dr. Tubbs and Dr. Dalton to support their view that Dr. Kim's treatment of Rice was objectively reasonable. The problem for defendants is that Rice has put forth evidence from which a reasonable jury could conclude that, despite these efforts, Dr. Kim's response to Rice's complaints was objectively unreasonable. For example, Rice gives evidence, in the form of his own testimony and his medical records, that he was in pain for months, including sometimes "extreme" pain and pain so bad it made him vomit. *See, e.g.*, Rice Dep. Tr. at 61:5-8, 99:2-13; Rice Med. Recs. at 150, 235, 238, 240.

And Rice's expert witness opines that Dr. Kim's treatment departed from accepted medical judgment because Dr. Kim should have ordered diagnostic imaging by March 26, 2020, Coogan Rep. at 3-6; less time should have passed between the ultrasound and Rice's appointment with a urologist, *id.* at 6-7; and much of Rice's pain could have been avoided had Dr. Kim hewed more closely to accepted

10

medical judgment, *id.* at 7. Rice also supplies Dr. Kim's testimony supporting that Dr. Kim understood that Rice's March 25, 2020 urinalysis suggested a possible kidney stone, Kim Dep. Tr. at 96:17–21; that the April 9, 2020, and April 17, 2020 urinalyses were further consistent with the incidence of kidney stones, *id.* at 102:20–105:1; and that Dr. Kim knew of Rice's history of kidney stones as early as January 2020, *id.* at 59:16–20. A factfinder will need to decide which version of events to credit. Disputed issues that may inform this decision abound. These include (to name a few): when Dr. Kim became aware of Rice's history of kidney stones; the extent of Rice's pain and whether Rice made that pain known to Dr. Kim, either directly or through other medical staff; whether Rice refused medical care on certain occasions; and whether Rice's receipt of ultrasounds and a CT scan when he received them reflect objectively reasonable conduct on Dr. Kim's part, or if those diagnostic tools should have been deployed earlier. For each of these issues, Rice offers evidence that could lead a jury to side with him.

Three additional issues warrant comment. First, defendants suggest for the first time in their reply brief that Dr. Coogan is not qualified to opine as to the treatment of an inmate in a correctional setting. Both because it was raised only in defendants' reply brief and because it is a cursory argument citing no case law, that argument is waived. *See Carroll v. Lynch*, 698

11

F.3d 561, 564 n.2 (7th Cir. 2012) (holding arguments raised for the first time in reply brief are ordinarily waived); *Weinstein*, 422 F.3d at 477 n.1 (finding undeveloped, unsupported arguments waived).

Next, defendants take issue with Rice's submission of a declaration as an exhibit to his statement of material facts, arguing that it is intended to create a "sham issue of fact" over whether Rice refused medical treatment on certain occasions. Defs.' Reply, ECF 94 at 7–9. In their argument, defendants assert that there is no evidence in the record that could support Rice's contention that he did not refuse medical care. But in fact, as noted above, Rice testified at his deposition that he never refused medical care while at the Jail. So the sham affidavit rule does not apply, since that rule simply "prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (citing *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018)). And because the other challenged portions of the declaration play no role in my conclusion that summary judgment is inappropriate as to Rice's § 1983 claim against Dr. Kim, I need not further resolve defendants' sham affidavit argument.

Finally, defendants argue that punitive damages are unavailable for Rice's § 1983 claims because Rice has not provided evidence that defendants' conduct was "motivated by evil motive or

intent," or that it involved "reckless or callous indifference" to Rice's constitutional rights, as required by Supreme Court precedent. *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Rice does not respond to this argument or address punitive damages at all. Accordingly, I grant summary judgment to defendants on the issue of punitive damages as to the § 1983 claims.

### III.

For the foregoing reasons, defendants' motion for summary judgment is granted in part on the issue of punitive damages as to the § 1983 claims. The motion is otherwise denied.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: November 30, 2023